UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIAM HAWKINS,
et al.,

    Plaintiffs,

        v.                                    Civil Action No. 09-1831 (JEB)

THOMAS E. BOONE,
et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff William Hawkins is a Metropolitan Police Department detective who complained to a supervisor about MPD's "All Hands on Deck" staffing initiative. He also made his concerns known to *The Washington Post*. This media interview led to Hawkins's being disciplined and, ultimately, this lawsuit. He claims here that MPD's actions violated the Whistleblower Protection Act and his First Amendment rights. Defendants have now filed a Motion to Dismiss – or, alternatively, for Summary Judgment – some of which the Court grants.[1]

---

[1] In considering this Motion, the Court has reviewed Defendants' Motion to Dismiss or, Alternatively, for Summary Judgment, Plaintiffs' Opposition thereto, Defendants' Reply, Defendants' Notice of Supplemental Authority, and Plaintiffs' Response.

## I. Factual and Procedural Background

Hawkins has worked as a detective for the Metropolitan Police Department, an agency of Defendant District of Columbia, since 1998. Comp., ¶ 8. He is also a member of Plaintiff Fraternal Order of Police ("FOP"), a labor union. Id., ¶ 2.

In June 2009 Hawkins was assigned to investigate a home burglary. Id., ¶ 9. On June 23, in response to electronic communication he received from the victim, Hawkins informed her that he would not be able to begin work on the case until July 5, due to two upcoming All Hands on Deck ("AHOD") exercises. Id., ¶ 10. The homeowner forwarded these messages to Hawkins's supervisor, Insp. Michael Reese. Id., ¶ 11. Hawkins, meanwhile, forwarded them to Off. Kristopher Baumann, the Chairman of the FOP. Id., ¶ 12. The next day, Reese spoke with Hawkins about the email exchange, id., ¶ 13, and Hawkins expressed his concerns about the AHOD policy. Id.

On July 16, 2009, a *Washington Post* journalist contacted Hawkins regarding an article she was researching on the AHOD initiative. Id., ¶ 14. Hawkins alleges that he received authorization to speak to her on behalf of the FOP from Baumann. Id., ¶ 15. An article was published the next day in *The Washington Post*, in which Hawkins was quoted commenting on the AHOD policy and its effect on his caseload, including the burglary. Id., ¶ 16. That same day, Defendant Sgt. Thomas Boone contacted Hawkins, at the direction of Defendant Capt. Paul Shelton, regarding his disclosure to the press. Id., ¶ 17. Shelton had ordered Bonne to initiate an investigation of Hawkins, and Boone told Hawkins he would be served with a Witness Statement Report. Defendant Cmdr. Rodney Parks later served Hawkins with a reprimand for "Failure to Make Proper Notifications when Speaking to a Member of the Press." Id., ¶ 19.

Hawkins and the FOP then filed suit in the D.C. Superior Court on September 4, 2009, following which Defendants removed the case to federal court. Defendants then filed the instant Motion to Dismiss under Rule 12(b)(6), as failing to state a claim upon which relief may be granted, or, alternatively, for summary judgment under Rule 56. The case was ultimately transferred to the current Judge on April 1, 2011.

**II.     Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted." When the sufficiency of a complaint is challenged under Rule 12(b)(6), the factual allegations presented in it must be presumed true. Leatherman v. Tarrant Cty. Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993). The notice pleading rules are "not meant to impose a great burden on a plaintiff." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005). And although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted). Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," id., and there must be "more than a sheer possibility that a defendant has acted unlawfully." Id.

A motion to dismiss under Rule 12(b)(6) must rely solely on matters within the complaint, see FED. R. CIV. P. 12(d), which includes statements adopted by reference as well as copies of written instruments joined as exhibits. FED. R. CIV. P. 10(c). Where the Court must consider "matters outside the pleadings" to reach its conclusion, a motion to dismiss "must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d); see also Yates v.

District of Columbia, 324 F.3d 724, 725 (D.C. Cir. 2003); Winston v. Clough, 712 F. Supp. 2d 1, 6 (D.D.C. 2010) ("[W]here both parties submit material outside the pleadings and the parties are not taken by surprise or deprived of a reasonable opportunity to contest facts averred outside the pleadings and the issues involved are discrete legal issues, the court may convert the motion to a motion for summary judgment without providing notice or the opportunity for discovery to the parties.") (internal citations omitted).

### III. Analysis

#### A. Count I – Whistleblower Act

The D.C. Whistleblower Protection Act ("WPA") is meant to encourage District of Columbia employees to "report waste, fraud, abuse of authority, violations of law, or threats to public health or safety" by protecting such employees from the "retaliation or reprisal" they could otherwise face for bringing these government excesses to light. D.C. Code § 1-615.51. The WPA thus forbids an employer from "tak[ing], or threaten[ing] to take, a prohibited personnel action or otherwise retaliat[ing] against an employee because of the employee's protected disclosure." § 1-615.53(a).

In 2010 the WPA was amended in a number of ways, and both sides spend a great deal of time arguing about whether those amendments should have retroactive effect. Plaintiffs argue in favor of retroactivity, while Defendants argue against. Compare Mot. at 8-15 with Opp. at 6-9. Although one district court has found the WPA amendments not to be retroactive, see Baumann v. District of Columbia, 2011 WL 1333663, at *4 (D.D.C. 2011), this Court need not decide the issue. Even applying the new WPA, as Plaintiffs urge, does not yield them success.

*1. Lack of Causation*

To make out a *prima facie* case under either version of the WPA, an aggrieved employee must show by a preponderance of the evidence: (1) a protected disclosure, as defined in §1-615.52(6); (2) a prohibited personnel action, as defined in §1- 615.52(5); and (3) that the protected disclosure was a "contributing factor" or causally connected to the prohibited personnel action, as defined in §1-615.52(2). See § 1-615.54(b).

Hawkins alleges in his Complaint that he made two protected disclosures: the first to Reese, one of his supervisors, and the second to Baumann, the Chairman of the FOP. Comp., ¶¶ 22-23. He also alleges that he was subjected to adverse personnel action – namely, a disciplinary proceeding and an administrative investigation. Id., ¶ 24. Where his argument founders, however, is on the third element: causation.

The Complaint makes clear that the adverse action occurred because of his *Washington Post* interview, rather than because of the disclosure to either Reese or Baumann. Hawkins specifically claims that the investigation was an "improper retaliation for his comments in the Article." Id., ¶ 20. Even more telling, in his Motion he hews to the same line: "Unlike in cases where an adverse employment action might stem from a variety of acts by the affected employee, the MPD has plainly stated that it is Plaintiff's protected speech – his release of information to the media – that motivated the MPD to take disciplinary action against him." Opp. at 27; see also id. at 25 ("[he] would not have suffered any employment consequences had he not spoken to the press") (internal citation omitted).

This is no misguided argument; it is what his own facts demonstrate. According to the Complaint, the administrative investigation began the same day as the article was published, and the reprimand was expressly for "failure to notify the MPD's Public Information Office prior to

5

speaking with the press." Id., ¶¶ 16-17.  Hawkins may thus not go forward on Count I because he cannot show that the claimed protected disclosures were causally connected to the disciplinary proceeding.

### 2. *No Protected Disclosure*

Even were Hawkins to allege – *e.g.*, in an amended complaint – that his interview with *The Washington Post* should also qualify as a protected disclosure, he would still not prevail because his statements to the paper about an ongoing policy debate did not constitute a "disclosure" as required under the WPA.[2]

The WPA is meant to protect employees who report or blow the whistle on government "waste, fraud, abuse of authority, violations of law, or threats to public health or safety." D.C. Code § 1-615.51.  Yet, Hawkins was merely giving his opinion on a policy issue.  He correctly points out that a government employee may be protected by the WPA even if he disclosed information previously known by at least some members of the public.  See Williams v. District of Columbia, 9 A.3d 484, 489 (D.C. 2010) ("We decline to adopt a reading of the DC-WPA that would protect employees who have conveyed to their supervisors information about the existence of an abuse of the type enumerated in the Act only in instances in which no one in the general public is aware of the abuse.") (emphasis added).  Williams, however, refused to extend WPA protection to a government employee who had "relay[ed] public complaints about a perceived abuse" to his supervisor because this "does not appear to be the particular evil at which the DC-WPA was aimed."  Id. at 490 n.5

---

[2] Under the pre-2010 WPA, statements to a newspaper would not be covered because *The Washington Post* was neither a "supervisor" nor a "public body" as required under § 1-615.52(a)(6).  Under the current incarnation of the WPA, a disclosure may be made "to any person."  Id.

6

What happened here is similar: Hawkins was entering a debate about a controversial issue long discussed by both sides. Just as in Williams, members of the public and the press had "themselves perceived an alleged abuse, and already vociferously and repeatedly draw[n] attention" to the AHOD policy long before Hawkins entered the debate. Id. at 490; see also Meuwissen v. Department of the Interior, 234 F.3d 9, 13 (Fed. Cir. 2000) ("A disclosure of information that is publicly known is not a disclosure under the WPA. The purpose of the [federal] WPA is to protect employees who possess knowledge of wrongdoing that is concealed or not publicly known, and who step forward to help uncover and disclose that information."), quoted in Wilburn v. District of Columbia, 957 A.2d 921, 925 (D.C. 2008) (noting that "the federal whistleblower statute . . . is instructive in interpreting . . . the DC-WPA") (internal citation omitted).

Hawkins himself acknowledged this public notoriety in his Complaint. See Comp., ¶ 14 ("AHOD is Chief Cathy L. Lanier's public relations initiative, and the cornerstone of her tenure as Chief."); id., ¶ 30 (referring to "the ongoing public debate as to the appropriateness of the AHOD initiative"). Defendants also attach to their pleadings press discussion of the issue. See, e.g., Mot., Exh. A (Gary Reals, DC Police Launch 4th Installment of 'All Hands on Deck', WUSA9, Oct. 30, 2007); Exh. C (Bill Myers, Lanier Bringing Back All Hands on Deck for '09, THE EXAMINER, Jan. 29, 2009, available at http://washingtonexaminer.com/local/2009/01/lanier-bringing-back-all-hands-deck-09).

Hawkins tries to save his claim by arguing that the information he conveyed was new because it pertained to the impact of AHOD on his investigation of the specific June burglary, rather than to the broader effects of the policy. Response Supp. at 4. This alternate argument is no more persuasive because it cannot be said that the particulars of this investigation were of such great

7

import to the citizenry of the District of Columbia as to bring the information disclosed by Hawkins under the protection of the WPA. Rather, it is the effect of AHOD on myriad investigations that had the potential to be "[a] substantial and specific danger to the public health and safety." D.C. Code § 1-615.52(a)(6)(E).

In sum, because the AHOD policy had already sparked public debate long before Plaintiffs' alleged disclosure, he cannot be said to have blown the whistle by speaking to the press on these issues.[3] Count I, therefore, is properly dismissed.

### B. Count II – First Amendment

#### 1. Private Citizen as Union Representative

Defendants next argue that Hawkins's First Amendment claim must also fail because he spoke "in his official capacity as an MPD Detective about his police work." Mot. at 26. They urge this Court to rely on the test developed by the Supreme Court in Garcetti v. Ceballos, 547 U.S. 410 (2006), to conclude that Hawkins's speech was not protected by the First Amendment. Garcetti concerned a deputy district attorney who was disciplined for writing a memo calling for the dismissal of a case based on alleged mishandling of a search warrant. The Supreme Court held his actions were not protected by the First Amendment. It explained: "The first [inquiry] requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises." Id. at 418; see also Winder v. Erste, 566 F.3d 209, 215 (D.C. Cir. 2009) (noting that D.C. Circuit "ha[s] consistently held that a public employee speaks without First

---

[3] Plaintiffs have also clarified that Hawkins alone is pursuing a WPA claim in this case. Opp. at 20. It is thus unnecessary for the Court to consider Defendants' argument that the FOP lacks standing under the WPA.

Amendment protection when he reports conduct that interferes with his job responsibilities, even if the report is made outside his chain of command") (internal citations omitted).

The Garcetti analysis is not controlling in this case, however, because Hawkins has alleged that he was speaking not as a public employee, but on behalf of the FOP, when he communicated with the *Post*. Comp., ¶ 15. Though neither the Supreme Court nor this Circuit has addressed the issue of how Garcetti applies to a union representative, other courts have found that such speech is different. In fact, in one case speech by Baumann himself was held to be protected. See Baumann v. District of Columbia, 744 F. Supp. 2d 216, 224 (D.D.C. 2010) ("Courts have recognized that when a public employee is acting in his capacity as a union leader, his speech is protected by the First Amendment.") (citing Fuerst v. Clarke, 454 F.3d 770, 774 (7th Cir.2006) ("Because Fuerst's comments that precipitated the adverse action taken against him were made in his capacity as a union representative, rather than in the course of his employment as a deputy sheriff . . . [,] the Supreme Court's recent decision in Garcetti v. Ceballos is inapposite.") (internal citation omitted).

Unlike in Baumann, Hawkins does not claim to have been a union leader, but merely to have spoken as a representative of the union. This difference need not be dispositive, however, because if Hawkins was truly speaking on behalf of the FOP, as this Court must credit at this stage, his speech was not "made pursuant to his duties," Garcetti 547 U.S. at 411, and thus would merit First Amendment protection.

Defendants point to certain factors to argue that Hawkins was speaking in his capacity as a detective, rather than as a union representative: (1) he "spoke exclusively about his inability to do his job" in the article; (2) the *Post* "identified [him] only in his official capacity," whereas Baumann was identified as the head of the FOP; (3) and "the *Post* quoted excerpts from emails that

9

[he] sent and received during the course of his official police work and pursuant to his duties as an MPD Detective." Mot. at 28-29; see id., Exh. E (Theola Labbé-DeBose, Not Everyone's Aboard High-Profile Crime Initiative, WASH. POST, July 17, 2009, at B1). These factors may make Hawkins's ultimate triumph difficult, but on a motion to dismiss, it is enough that Hawkins has pled with some plausibility and specificity that he was acting as a union representative when he gave the interview.

### 2. Constitutionality of MPD Order

Plaintiff has also asked this Court to find MPD General Order 204.01, which governs procedures when officers speak to the media, unconstitutionally vague, overbroad, and an impermissible prior restraint. Comp., ¶¶ 42-43, 51. As this Court has denied Defendant's Motion to Dismiss Count II on other grounds, it is unnecessary at this point to reach these constitutional issues.

### 3. FOP and Associational Standing

Defendants next summarily argue in a paragraph that the FOP must be dismissed as a plaintiff in the case because it has no standing to bring its First Amendment claim. Mot. at 31. Such a position ignores the doctrine of "associational standing," which permits the FOP to proceed as a party.

Following the Supreme Court case of Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333 (1977), the D.C. Circuit has clearly permitted associational standing: "Associations . . . have representational standing if: (1) at least one of their members has standing to sue in her or his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires the

participation of an individual member in the lawsuit." American Library Ass'n v. F.C.C., 401 F.3d 489, 492 (D.C. Cir. 2005) (citations omitted).

Although the Court need not decide the constitutionality of MPD General Order 204.01 to deny Defendants' attempt to dismiss Count II, the challenge to its constitutionality is relevant to associational standing. In challenging the Order, the FOP argues that it is unconstitutionally vague and overbroad and acts as a prior restraint on speech. Comp., ¶¶ 42-43, 51. In setting forth its allegations, the FOP has satisfied the three requirements for associational standing.

First, the General Order applies only to officers of the MPD, and the FOP is the organization that represents MPD officers. As a result, an FOP member could challenge the constitutionality of the Order; indeed, Plaintiff Hawkins is here making just such an argument (along with other claims). At least one FOP member, therefore, has standing to sue on his own behalf. Second, since the FOP's main purpose is to represent the employment interests of its officers, which includes their ability to speak out on issues and their right to understand the limits to such speech, the association clearly seeks to protect interests "germane to its purpose." In fact, this is not the only suit the FOP has brought challenging restrictions on its members' free speech rights. See, e.g., Baumann v. District of Columbia, 744 F. Supp. 2d 216 (D.D.C. 2010). Finally, although Hawkins is himself a plaintiff in the case, the challenges to the constitutionality of the Order do not require the participation of individual members. See Adland v. Russ, 307 F.3d 471, 478-79 (6th Cir. 2002) (upholding associational standing for ACLU to challenge religious display as violation of First Amendment where members would come into contact with monument, organization devoted substantial effort to separation of church and state, and no basis to require participation of members).

As such, the FOP does have associational standing to challenge the constitutionality of General Order 204.01.

### 4. Municipal Liability

Relying on Monell v. Dep't of Social Services of the City of New York, 436 U.S. 658 (1978), Defendants next argue that the District should be dismissed from the case. Mot. at 33-34. Defendants' position is that Plaintiffs cannot impose § 1983 liability under *respondeat superior* "based solely on an isolated incident of employee discipline." Id. at 34. Indeed, it is true under Monell that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." 436 U.S. at 694. Instead, what is required is that the "execution of a government's policy or custom . . . inflicts the injury." Id. Yet that is precisely what Plaintiffs are alleging here.

As Plaintiffs point out, "Plaintiffs seek to hold the District of Columbia liable because its agency, the MPD, employs policies and orders that infringe on Detective Hawkins' rights." Opp. at 37 (emphasis original). In other words, Plaintiff's complaint is that General Order 204.01 and MPD's implementation of that Order are what constitute the First Amendment violations here. As such, they have satisfied the Monell standard.

### 5. Qualified Immunity

Although the District thus remains as a Defendant, the outcome is different for the individual officers sued. They have argued that they should be dismissed under the doctrine of qualified immunity. Mot. at 35-36. They contend that, even if a violation of Hawkins's constitutional rights occurred here, those rights were not clearly established at the time they acted. Id. The Court concurs.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Courts must, therefore, determine whether a plaintiff's allegations "make out a violation of a constitutional right" and whether "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. at 816 (citation omitted). "Because qualified immunity is an immunity from suit[,] . . . we have repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Id. at 815 (citations and internal quotations omitted).

As discussed above in Section III(B)(1), Hawkins has sufficiently alleged that his First Amendment rights were infringed by MPD's conduct in disciplining him for his speech to the newspaper – at least at this stage of the proceedings where the Court must accept his allegations that he was speaking as a union representative. Yet it is an entirely separate question as to whether such rights were clearly established. While Hawkins argues that "reasonable people are aware of the First Amendment[, which is] clearly established law, " Opp. at 40, such an argument glosses over the issues at play. In denying Defendants' Motion on Count II, the Court held that Hawkins's allegation that he was speaking on behalf of the FOP was critical. The individual Defendants, however, have two strong points to make on the issue of qualified immunity.

First, their review of the *Washington Post* article would not have led them to believe that Hawkins was, in fact, speaking as a union representative. Indeed, the article identifies Hawkins only as a detective and never mentions that he is a member of the FOP, let alone is speaking in a representative capacity. The article, moreover, refers to Baumann as the "head of the Fraternal

Order of Police Lodge 1." The most common inference, therefore, would be that Baumann is the only one in the article speaking on behalf of the union. If the individual Defendants did not have any reason to believe that Hawkins was speaking as anything other than a police officer, then they could assume that, under Garcetti, he had no First Amendment protection.

Second, even if the individual Defendants should have inferred that Hawkins was speaking on behalf of the union, they still cannot be said to have violated "clearly established" rights by disciplining him. As discussed in Section III(B)(1), previous cases that involved union speech involved the named head of a particular union. The officers might well not have known that an FOP representative, as opposed to its head, also possessed clear First Amendment rights. In such a situation, they should not lose their qualified immunity. See Atherton v. District of Columbia Office of Mayor, 567 F.3d 672, 689 (D.C. Cir. 2009) (conduct must "violate clearly established statutory or constitutional rights of which a reasonable person would have known") (citation and internal quotation omitted; emphasis added); Anderson v. Creighton, 483 U.S. 635, 640 (1987) ("in light of pre-existing law the unlawfulness must be apparent").

The first of these is a mistake of fact, and the second is a mistake of law. Qualified immunity, however, "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson, 129 S.Ct. at 815 (citation and internal quotation omitted). The individual Defendants, therefore, do not belong in this suit.

**IV. Conclusion**

The Court, accordingly, ORDERS that:

1. Defendants' Motion is GRANTED IN PART and DENIED IN PART;

2. Count I is DISMISSED;

3. Count II is DISMISSED as to the individual Defendants only; and

4. Defendant District of Columbia shall file its Answer on or before June 6, 2011.

   **SO ORDERED**.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: May 23, 2011